1 **WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Susan Kepling,<br><br>    Plaintiff,<br><br>vs.<br><br>Michael J. Astrue, Commissioner of Social Security,<br><br>    Defendant. | No. CV 10-0710-PHX-EHC<br><br>**ORDER** |

This is an action for judicial review of a denial of disability insurance benefits under the Social Security Act, 42 U.S.C. § 405(g). The matter is fully briefed (Doc. 20, 21 & 25).

Plaintiff applied for disability benefits in January 2006 at approximately 45 years of age (Administrative Record [Tr.] 76-84). Plaintiff alleged an onset of disability beginning April 23, 2005 (Tr. 14, 81). Plaintiff is insured for benefits through March 31, 2010 (Tr. 14). The Administrative Law Judge ("ALJ") listed Plaintiff's severe impairments as fibromyalgia[1]

---

[1] Fibromyalgia is a rheumatic disease that causes inflammation of the fibrous connective tissue components of muscles, tendons, ligaments and other tissue. Common symptoms include chronic body pain, multiple tender points, fatigue, stiffness, and a pattern of sleep disturbance that can exacerbate pain and fatigue. See Benecke v. Barnhart, 379 F.3d 587, 589 (9th Cir. 2004). Fibromyalgia is a "syndrome of chronic pain of musculoskeletal origin but uncertain cure." Stedman's Medical Dictionary, at 671 (27th ed. 2000).

and irritable bowel syndrome[2] (Tr. 15). Plaintiff's past relevant work was listed as employment at a dog track as clerk of scales, lead out starter, paddock judge, and waitress (Tr. 15). Plaintiff has a tenth grade education (Tr. 15, 100). Plaintiff's application was denied initially and upon reconsideration (Tr. 35-36, 38-39). After a hearing before an ALJ (Tr. 23-34), Plaintiff's application was denied (Tr. 11-20). The Social Security Appeals Council denied Plaintiff's request for review (Tr. 1-4), which was a final decision.

**I.**

Standard of Review

A person is "disabled" for purposes of receiving social security benefits if he or she is unable to engage in any substantial gainful activity due to a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least twelve months. Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992). Social Security disability cases are evaluated using a five-step sequential evaluation process to determine whether the claimant is disabled. The claimant has the burden of demonstrating the first four steps. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

In the first step, the ALJ must determine whether the claimant currently is engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. The second step requires the ALJ to determine whether the claimant has a "severe" impairment or combination of impairments which significantly limits the claimant's ability to do basic work activities; if not, a finding of "not disabled" is made and the claim is denied. At the third step, the ALJ determines whether the impairment or combination of impairments meets or equals an impairment listed in the regulations; if so, disability is conclusively presumed and benefits are awarded. If the impairment or impairments do not meet or equal a listed

---

[2]Irritable bowel syndrome is characterized by cramping, abdominal pain, bloating, constipation and diarrhea. See, e.g., Caldwell v. Astrue, 2010 WL 5184247 *6 (S.D.W.Va. 2010).

impairment, the ALJ will make a finding regarding the claimant's "residual functional capacity" based on all the relevant medical and other evidence in the record. A claimant's residual functional capacity ("RFC") is what he or she can still do despite existing physical, mental, nonexertional and other limitations. Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). At step four, the ALJ determines whether, despite the impairments, the claimant can still perform "past relevant work"; if so, the claimant is not disabled and the claim is denied. The Commissioner bears the burden as to the fifth and final step of establishing that the claimant can perform other substantial gainful work. Tackett, 180 F.3d at 1099.

The Court has the "power to enter, upon the pleadings and transcript of record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for rehearing." 42 U.S.C. § 405(g). The decision to deny benefits should be upheld unless it is based on legal error or is not supported by substantial evidence. Ryan v. Commissioner of Social Security, 528 F.3d 1194, 1198 (9th Cir. 2008). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427 (1971). The Court must consider the record in its entirety and weigh both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. Jones v. Heckler, 760 F.2d 993, 995 (9th Cir.1985).

**II.**

Background Facts

In July 2004, Plaintiff was seen at Desert Grove Medical Center and reported a history of fibromyalgia (Tr. 307). In October 2004, David Leff, D.O., diagnosed Plaintiff with irritable bowel syndrome (IBS). Plaintiff also reported back and joint pain (Tr. 389-392).

On January 20, 2005, Plaintiff was seen by Richard Dinsdale, M.D., Desert Grove Medical, who noted Plaintiff's diagnosis of fibromyalgia and depression (Tr. 315-316). In February 2005, Plaintiff saw Dr. Leff for upper abdominal bloating and discomfort (Tr. 322).

On April 6, 2005, Plaintiff was treated at Desert Grove Medical for possibly worsening fibromyalgia, complaining of pain in her feet and ankles. Plaintiff was referred to a rheumatologist (Tr. 326-327). In May 2005, Plaintiff told Dr. Leff she was "100% better" with treatment for her IBS. Plaintiff said she had quit her job, her fibromyalgia was "acting up," and she was going to look for a desk job (Tr. 330-331, 375-376).

In June 2005, Michael J. Fairfax, D.O., a rheumatologist, examined Plaintiff and noted tenderness with light palpation over several major muscle, bursal, and tendon groups, and that she exhibited 6 tender points. Dr. Fairfax assessed Plaintiff with possible chronic fatigue syndrome or fibromyalgia and prescribed Neurontin (Tr. 274-275). On July 20, 2005, Dr. Fairfax adjusted Plaintiff's medication from Neurontin to Vicodin and noted suspected fibromyalgia "although without convincing tender point examination." Plaintiff reported worsening IBS (Tr. 276). On August 24, 2005 Dr. Fairfax reported that Plaintiff had been "firmly diagnosed with fibromyalgia," noting she fit the American College of Rheumatology criteria "quite nicely" (Tr. 279).[3]

Due to her insurance guidelines, from September 2005 into May 2006, Plaintiff was seen on a monthly basis by providers at Desert Grove Medical, including nurses Paul Snyder and Roger McKee,[4] regarding her fibromyalgia (Tr. 342-343, 353-360, 365, 367-372, 513-518). During these consultations, Plaintiff reported chronic pain in her lower back, abdomen, hands, feet, legs, head and neck, described as aching, shooting, stabbing, burning, etc., and high blood pressure (Tr. 353-356, 367, 369, 371, 516-517, 513-514). A November 2005 physical exam indicated tenderness with range of motion of the wrist, hands, fingers, knees and lower lumbar area (Tr. 353). March 2006 treatment notes showed back pain, joint pain and stiffness, and neck stiffness (Tr. 371). On April 21, 2006, Plaintiff additionally

---

[3] This report is contained in a letter that shows the signature of "Peter Trethewey, P.A.-C" as dictated by Dr. Fairfax (Tr.279).

[4] Snyder and McKee appeared to be working with Dr. Dinsdale (Tr. 344, 629).

complained of chronic fatigue (Tr. 516-517). At a May 2006 exam, tenderness was noted throughout Plaintiff's vertebral column (Tr. 513-514). At various times during this period, Plaintiff's prescribed medications included Lortab, Elavil, Ibuprofen 600 mg, Robaxin, Quinine Sulfate, Elavil, Quinine, Prednisone, Vicodin, Lyrica and Morphine Sulfate (Tr. 354-356, 516-517, 513-514). In February/March 2006, Plaintiff was referred to a pain management specialist and to a cardiologist (Tr. 369-372).

On May 23, 2006, Plaintiff presented to the Mesa Pain Management Center (Mesa Center) where she was seen "in conjunction with Dr. Chirban" (Tr. 397). Plaintiff reported overall constant pain and her medication (Neurontin, Flexeril and MS Contin) was adjusted. Plaintiff was assessed with cervical pain, lumbar pain, and fibromyalgia (Tr. 396-397). Plaintiff was treated at the Mesa Center once to twice monthly during 2006, complaining mostly of constant back, hands and feet pain and occasionally of pain in her arms and neck (Tr. 491-498, 600). Plaintiff's prescribed medications included Neurontin, MS Contin, Flexeril, Methadone, Soma and Celebrex (Tr. 495-498, 493). Plaintiff reported that her quality of life had improved with treatment (Tr. 491-495). On September 6, 2006, x-rays of Plaintiff's right shoulder, elbow, forearm and wrist were unremarkable (Tr. 484). On November 16, 2006, Plaintiff reported to her providers at Desert Grove who noted full range of motion in Plaintiff's extremities (Tr. 506).

In January and February 2007, Plaintiff was seen at the Mesa Center for complaints of constant all over body pain she described as stabbing, shooting and deep (Tr. 597-598). In March 2007, Plaintiff reported to Angelo Chirban, M.D., Mesa Center, complaining of whole body pain and her medication was adjusted. Dr. Chirban recommended a physical exercise program such as aqua-therapy (Tr. 596). In April 2007, Plaintiff reported she had started physical therapy without much relief but her medication was taking the "edge off" and her functioning had improved (Tr. 595). In May 2007, Plaintiff was seen at the Mesa Center complaining of constant all-over pain and difficulty sleeping due to back pain but said the constant stabbing pain in the low back had improved with eipdural treatments (Tr. 682).

On June 14, 2007, Plaintiff was seen at the Mesa Center and her diagnoses included chronic cervical pain, fibromyalgia and IBS. Plaintiff reported that pain interfered with sleeping, daily activities and thought processes. An examination indicated myofascial[5] trigger points in Plaintiff's cervical and lumbar areas and decreased range of motion in the upper extremities. Plaintiff described the pain as stabbing, shooting, aching, sharp, throbbing and penetrating, but was sometimes helped by pool therapy (Tr. 677-680).

On July 12, 2007, Plaintiff was seen at the Mesa Center and her provider noted Plaintiff's reports of fair pain control and that she could perform all activities of daily living and function independently (Tr. 672). A physical exam revealed myofascial trigger points and muscle spasms in the lumbar spine and cervical spine (Tr. 671). Plaintiff's assessments included "mild" lumbar degenerative disc disease in addition to fibromyalgia, cervical pain, IBS and carpal tunnel syndrome (Tr. 673). Plaintiff completed a Pain Assessment Form and reported back, hand, arm and overall body pain described as shooting, aching, sharp, throbbing, etc. She also reported difficulty thinking and memory loss (Tr. 674-675).[6]

Between August 2007 and November 2007, Plaintiff's medical records from the Mesa Center contain similar reports indicating myofascial trigger points in Plaintiff's cervical, lumbar and dorsal areas and occasionally in her chest area. Plaintiff's providers noted her reports of improved pain control, quality of life and functionality. Plaintiff continued to report body pain that interfered with sleeping, daily living activities and thought processes in her Pain Assessment Forms (Tr. 663-668, 657-661, 649-655, 643-647, 635-640). Plaintiff's November 2007 list of medications included Methadone, Carisoprodol, Hydrochlorothiazide, Vytorin, Mag-G, Atenolol, Promethazine, Naproxen, and Activella (Tr. 648).

---

[5]Myofascial refers to the fascia (sheet of fibrous tissue) surrounding and separating muscle tissue. Stedman's Medical Dictionary at 647, 1173 (27th ed. 2000).

[6]This medical report from the Mesa Center and subsequent such reports consist of an assessment by a medical provider and a Pain Assessment Form completed by Plaintiff.

On February 1, 2008, Plaintiff's Mesa Center records noted her problems as fibromyalgia, chronic cervical pain, mild lumbar degenerative disc disease and IBS (Tr. 751). Plaintiff completed a Pain Assessment Form in which she reported back, legs, and stomach pain described as stabbing, shooting, aching, etc., that interfered with her sleep and activities of daily living (Tr. 752-753). She also reported chronic fatigue (Tr. 753). Plaintiff continued to be seen at the Mesa Center for similar complaints in May, June and July 2008 (Tr. 746-749, 738-742, 730-735).

On June 6, 2008, advance practice nurse Maureen Petrides of the Mesa Center opined that Plaintiff could not consistently work 8 hours per day, 5 days per week; that Plaintiff could lift less than 10 pounds; and, that Plaintiff could sit for less than 4 hours and stand or walk less than one hour in an 8-hour day (Tr. 796-797).

Medical progress notes dated June 10, 2008 regarding Plaintiff's treatment at Desert Grove indicated that Plaintiff did not appear at the time to have any sort of rheumatoid arthritis or rheumatologic disease (Tr. 709). On August 1, 2008, Plaintiff was seen at the Mesa Center and her provider noted Plaintiff's reports of adequate pain control and the ability to function well and to perform all activities of daily living (Tr. 803-804). Plaintiff's complaint of lumbar pain was noted (Tr. 805).

*State Agency Reviewing Report - 2006*

On July 12, 2006, State Agency physician John Hayden, M.D., expressed the opinion that Plaintiff's functional abilities were consistent with the ability to perform light work (Tr. 434-441). Dr. Hayden noted that Plaintiff's complaint of fibromyalgia had not been established clinically (Tr. 435).

*Function Reports - 2006*

In a Function Report dated November 6, 2006, Plaintiff said she watched television, prepared at least simple (microwave) meals, did "a little bit" of laundry about once a week, drove, shopped for groceries every two weeks, paid bills, used a checkbook, and counted

1 change. Plaintiff said she could walk 8 to 10 steps before needing to stop and rest. Plaintiff said she followed spoken and written instructions pretty well (Tr. 141-148).

Plaintiff's daughter, Nichole Schiller, completed a Third Party Function Report dated November 6, 2006 and said that Plaintiff took a nap, watched television, prepared simple meals, did a little bit of laundry, drove, and shopped for groceries. Ms. Schiller said Plaintiff had difficulty concentrating, and that she could only walk 5 to 6 steps before she needed to stop and rest (Tr. 149-156).

### III.

### The Hearing Before the ALJ: October 6, 2008

Plaintiff, represented by counsel, and Vocational Expert ("VE") Sandra Richter testified at the hearing. Plaintiff said she is 4'11" tall and weighs 170 pounds (Tr. 30).

Plaintiff testified she has pain in her feet, legs and back, that her hands and feet swell and she takes medication for the swelling (Tr. 26-27). Plaintiff said her migraine headaches seemed to occur 3 to 4 times per month and last 5 to 6 hours on average (Tr. 28). When Plaintiff has a migraine, she lies down in a dark place (Tr. 28). She has been prescribed Ibuprofen, 800 mg, for the migraine headaches (Tr. 28-29). Plaintiff testified that her irritable bowel condition is ongoing and includes constipation and bloated and upset stomach (Tr. 29).

Plaintiff has been diagnosed with fibromyalgia and is seeing a pain specialist on a regular basis (Tr. 30). Plaintiff's medication for fibromyalgia includes Methadone and Soma (pain) and Naproxen (swelling, pain). Her other medications include Atenolol and Vytorin. She reported no side effects (Tr. 30). Plaintiff's water therapy provides relief in the moment (Tr. 30-31). Plaintiff testified that she can stand for approximately 15 to 20 minutes, walk for about 20 minutes, and sit for about 45 minutes (Tr. 31). She has difficulty sleeping at night, stating that her problems are insomnia, pain and fatigue (Tr. 31). Plaintiff sleeps about 4 hours at night and takes a nap during the day for about 2 and one-half hours (Tr. 31-32).

Upon questioning by the ALJ, the VE testified that Plaintiff's past work positions at the dog track (clerk of scales, lead out starter, paddock judge and waitress) are all light, semiskilled (Tr. 32-33). No skills were transferable to sedentary work (Tr. 33).

When questioned by Plaintiff's attorney, the VE said that assuming Plaintiff's testimony, she would not be able to perform her past work or any work (Tr. 33). The VE testified that, assuming an individual who could sit up to 4 hours a day, could stand and walk up to 2 hours a day, and could lift and carry less than 10 pounds, Plaintiff's past work and all work would be eliminated (Tr. 33).

**IV.**

### The ALJ's Findings

In a written decision dated October 27, 2008 (Tr. 14-20), the ALJ noted that Plaintiff had alleged disability based on fibromyalgia, irritable bowel syndrome, headaches, back and hand pain, swelling of the feet and hands, high blood pressure, and difficulty thinking clearly (Tr. 15). The ALJ found that Plaintiff had fibromyalgia and irritable bowel syndrome which are severe impairments but that Plaintiff did not have an impairment or combination of impairments that met or equaled the listings in the regulations (Tr. 15). Plaintiff's headaches, mild degenerative disc disease, swelling/edema of the hands and feet, and hypertension were determined to be non-severe impairments that would not prevent work activities (Tr. 17). Plaintiff also had no severe cardiac impairment (Tr. 17).

The ALJ found that the functional limitations from Plaintiff's impairments are less serious than she alleged, and that the objective evidence supported a finding that Plaintiff's impairments, while imposing some restrictions, do not prevent all work related activities (Tr. 16). The ALJ discussed medical records regarding Plaintiff's treatment by Drs. Fairfax and Dinsdale, and at the Mesa Center (Tr. 16-17). These records showed Plaintiff's diagnosis of fibromyalgia, irritable bowel syndrome and other conditions but that overall normal and benign physical results were reported (Tr. 16-17). The ALJ did not give substantial weight to the opinions of Nurse Petrides, finding they were not supported by the pain management

- 9 -

1 records (Tr. 17). The ALJ found that no evidence supported Plaintiff's allegations of
2 difficulty thinking clearly, noting that Plaintiff had not undergone any ongoing mental health
3 treatment and had not been prescribed psychotropic medications (Tr. 17-18). The ALJ found
4 that Plaintiff's allegations were not wholly credible regarding the severity and extent of her
5 limitations upon consideration of the overall medical evidence and hearing testimony (Tr. 18).

6 The ALJ found that Plaintiff had the residual functional capacity to perform light work
7 and that Plaintiff could perform any of her past work at the dog track as well as other work
8 that exists in significant numbers in the national economy (Tr. 18). The ALJ found that
9 Plaintiff is not under a disability and that, regarding this finding, substantial weight was
10 afforded to the opinions of the State Agency reviewing consultants which were supported by
11 the overall evidence of record (Tr. 19).

## V.

### Discussion

Plaintiff argues that the ALJ improperly discounted the effect of Plaintiff's fibromyalgia based on the lack of objective medical evidence; failed to properly weigh Plaintiff's subjective complaints; erred in weighing medical source opinion evidence; and erred in not affording more weight to the third-party report of Plaintiff's daughter. Plaintiff seeks an award of benefits. Defendant has responded that substantial evidence supports the ALJ's finding that Plaintiff could perform a broad range of light work and determination that Plaintiff is not disabled. Defendant argues that Plaintiff's request for remand for an award of benefits should be rejected but, in the alternative, if error is found, the case should be remanded for further administrative proceedings.

In this case, the ALJ appears to have relied in part on the lack of objective medical evidence in finding that Plaintiff's impairments, which include fibromyalgia, do not preclude all work (Tr. 16). The ALJ cited to Dr. Fairfax's June 8, 2005 report that Plaintiff had no

muscle weakness, no gross motor or sensory deficits, no active or chronic joint synovitis[7] or effusions, and had intact and symmetric deep tendon reflexes throughout, and only 6 tender points (Tr. 16). The ALJ also referred to Dr. Dinsdale's "few objective findings on examination" (Tr. 16). The ALJ discussed that Plaintiff's medical records from the Mesa Center disclosed "positive findings of myofascial trigger points, somewhat decreased range of motion in the lumbar spine" but otherwise showed "negative straight leg raise and normal deep tendon reflexes, muscle strength, sensation, and joints" (Tr. 17).

The Ninth Circuit has said that fibromyalgia is a disease that eludes objective evidence. Benecke v. Barnhart, 379 F.3d 587, 590, 594 (9th Cir. 2004)("[f]ibromyalgia's cause is unknown, there is no cure, and it is poorly-understood within much of the medical community"). "The process of diagnosing fibromyalgia includes (1) the testing of a series of focal points for tenderness and (2) the ruling out of other possible conditions through objective medical and clinical trials." Rogers v. Commissioner of Social Security, 486 F.3d 234, 244 (6th Cir. 2007). Fibromyalgia patients may "present no objectively alarming signs" and may "manifest normal muscle strength and neurological reactions and have a full range of motion." Rogers, 486 F.3d at 243-244(noting that objective tests are of little relevance in determining the existence or severity of fibromyalgia). In Benecke, the ALJ erred in requiring objective evidence "for a disease that eludes such measurement." Benecke, 379 F.3d at 590, 594 (fibromyalgia "is diagnosed entirely on the basis of patients' reports of pain and other symptoms").

The record shows that in August 2005, Dr. Fairfax, a rheumatologist, reported that Plaintiff "fits the American College of Rheumatology criteria" for a fibromyalgia diagnosis "quite nicely" (Tr. 279). The opinion of a rheumatologist is given greater weight than those of other physicians because it is an opinion of a specialist about medical issues related to the

---

[7]Synovitis refers to the inflammation of a synovial membrane, especially that of a joint. Stedman's Medical Dictionary, at 1773 (27th ed. 2000).

1  doctor's area of specialty. Benecke, 379 F.3d at 594 n. 4.  Between November 2005 and May
2  2006, Plaintiff complained to medical providers of chronic pain in her head, back, hands, feet,
3  joints and neck; she sometimes complained of fatigue; she described the pain as aching,
4  shooting, stabbing and continuous; and she was treated at Desert Grove Medical for
5  fibromyalgia (Tr. 353, 367, 369, 371, 516-517, 513-514).  During this period, Plaintiff's
6  medication included Lortab, Elavil, Ibuprofen 600 mg, Robaxin, Vicodin, Lyrica and
7  Morphine Sulfate  (Tr. 354, 355-356, 516-517, 513-514).

8  When Plaintiff began treatment at the Mesa Pain Management Center in May 2006,
9  Dr. Chirban assessed her conditions as including cervical pain, lumbar pain and fibromyalgia
10 (Tr. 396-397).  Between May 2006 and July 2008, Plaintiff complained to providers at the
11 Mesa Center of pain in her back, legs, hands, feet, neck and shoulders, and of cervical pain
12 and overall body pain, which she described as stabbing, shooting, deep, aching, throbbing,
13 etc. (Tr. 396-397, 498, 497, 496, 495, 494, 493, 491, 492, 600, 599, 598, 596, 595, 682, 677-
14 680, 673-675, 667-668, 660-661, 653-654, 646-648, 639-640, 734-735, 741-742, 748-749,
15 752-753).  Examination reports between June 14, 2007 and November 30, 2007 showed
16 myofascial trigger points in Plaintiff's lumbar, cervical, dorsal and chest areas (Tr. 677-680,
17 671, 664, 657, 649-650, 636).  Plaintiff at various times complained of fatigue (Tr. 668, 753,
18 749, 741-742) and reported that pain interfered with her sleep, daily activities and thought
19 processes (Tr. 677-680, 667-668, 660-661, 646-647, 639-640).  Plaintiff's prescribed
20 medication during this period included Neurontin, Flexeril, MS Contin, Soma, Methadone,
21 Celebrex, Carisoprodol, Promethazine and Naproxen (Tr. 396-397, 498, 495, 496, 493, 491,
22 648).

23 With respect to Plaintiff's symptom and pain evidence and the ALJ's determination
24 discounting Plaintiff's subjective complaints, unless there is affirmative evidence of
25 malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and
26 convincing."  Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998).  "[T]he ALJ must
27 identify what testimony is not credible and what evidence undermines the claimant's

1  complaints." Reddick, 157 F.3d at 722.  Once the claimant produces medical evidence of an
2  underlying impairment, the claimant's testimony of symptom severity may not be discredited
3  solely because it is not supported by objective medical evidence.  Bunnell v. Sullivan, 947
4  F.2d 341, 346-47 (9th Cir. 1991).

5  Defendant argues that the ALJ reasonably discounted Plaintiff's subjective complaints
6  based on inconsistencies between her reports to her treatment providers and her statements
7  during the administrative proceedings and based on Plaintiff's reports that she was able to
8  perform her activities of daily living (Doc. 21 at 14 & n.5). The ALJ found that Plaintiff has
9  fibromyalgia which is a severe impairment (Tr. 15). The ALJ further found that Plaintiff's
10 allegations were not wholly credible regarding the severity and extent of her limitations based
11 on review of the overall record (Tr. 18). Preceding this finding, the ALJ discussed the
12 objective medical evidence, noting the presence of only 6 tender points regarding Dr.
13 Fairfax's June 2005 exam of Plaintiff, and other overall normal or benign physical findings
14 regarding exams in August 2005, September 2005, and January 2006 through June 2008 (Tr.
15 16).  The ALJ discussed records from the Mesa Center noting Plaintiff's reports that
16 medication had improved her quality of life and resulted in good pain control, and that she
17 could perform daily living activities (Tr. 17). The ALJ discussed the lack of medical evidence
18 to support Plaintiff's allegations of difficulty thinking clearly (Tr. 17-18).  The ALJ did not
19 cite to any evidence of malingering.

20 In support of her argument that the ALJ improperly considered her pain and symptom
21 evidence, Plaintiff has cited to several medical reports that include Plaintiff's complaints of
22 pain, fatigue and difficulty in thinking clearly as relevant to the limitations caused by her
23 fibromyalgia condition (Doc. 20 at 40-41). Certain of these medical reports have been
24 discussed above as relevant to Plaintiff's fibromyalgia condition.

25 Plaintiff's reports to her providers at the Mesa Center between July 2007 and August
26 2008 of improved, adequate or good pain control, improved quality of life and improved
27 functional abilities regarding her daily living, were noted in "check-the-box"style statements

(See, e.g., Tr. 637, 644, 651, 665, 672, 732, 739, 746, 804). The ALJ cited to these records as part of the discussion relevant to not affording substantial weight to the opinions of Nurse Petrides (Tr. 17). The record also shows that in October 2007 and July 2008, Plaintiff reported that her IBS was "greatly improved" and was helped by medication (Tr. 652, 733). The Court is mindful that impairments that can be controlled effectively with medication are not disabling. Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006). However, such perfunctory or generic statements that a claimant is "doing better" do not necessarily constitute evidence of an improvement in symptoms. Plaintiff's medical records show Plaintiff's diagnosis of fibromyalgia, her attempts at treatment over a significant period of time, and her repeated complaints of pain and other symptoms for which she was prescribed a regimen of medication. "[O]ccasional symptom-free periods and even the sporadic ability to work are not inconsistent with disability." Reddick, 157 F.3d at 724.

Plaintiff testified at the hearing that she has difficulty sleeping at night, her problems are insomnia, pain and fatigue, and she has been diagnosed with fibromyalgia and is seeing a pain specialist on a regular basis (Tr. 30-31). Dr. Fairfax's diagnosis of fibromyalgia and Plaintiff's treatment by medical providers for the condition support Plaintiff's credibility.

Plaintiff reported that her daily activities include watching television, preparing simple meals, doing a "little bit" of laundry once a week, driving, and grocery shopping every two weeks. Plaintiff said she can walk 8 to 10 steps before needing to rest (Tr. 141-148). Plaintiff testified she could walk about 20 minutes (Tr. 31). "[T]he mere fact that a plaintiff has carried on certain daily activities such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability. One does not need to be 'utterly incapacitated' in order to be disabled." Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001)(quoting Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989)).

The RFC assessment provided by Dr. Hayden, a reviewing physician, indicating that Plaintiff has the ability to perform light work was dated July 12, 2006 (Tr. 434-441; see Doc. 25 [Plaintiff's Reply Brief] at 12) and did not take into account Plaintiff's pain management

treatment at the Mesa Center into 2008. Moreover, Dr. Hayden reported that Plaintiff's complaint of fibromyalgia had not been established clinically in contrast to the August 2005 opinion of Dr. Fairfax, a treating/examining physician and rheumatologist, that Plaintiff fit the diagnosis for fibromyalgia.  Generally, a treating physician's opinion is afforded more weight than the opinion of an examining physician, and an examining physician's opinion is afforded more weight than a non-examining reviewing or consulting physician's opinion. Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001).

The ALJ erred to the extent he relied on the lack of objective medical evidence in assessing the limitations caused by Plaintiff's fibromyalgia condition.  The ALJ further erred in discounting Plaintiff's pain and symptom evidence and in affording substantial weight to the opinion of a non-examining reviewing physician.

Plaintiff contends that the ALJ erred in assessing Nurse Petrides' opinion regarding Plaintiff's physical limitations. An ALJ may consider opinions from sources other than "acceptable medical sources," such as a nurse practitioner, to show the severity of the claimant's impairment(s) and how the impairment(s) affect the claimant's ability to work. 20 C.F.R. § 416.913(d)(1).  A non-acceptable medical source like a nurse cannot be considered a "treating source," and the opinion of a nurse is not entitled to "controlling weight."  See, e.g., Kohler v. Astrue, 546 F.3d 260, 268 (2d Cir. 2008).  The ALJ did not give substantial weight to Nurse Petrides' opinion finding it was not supported by the pain management records (Tr. 17). While the ALJ was not required to give "controlling weight" to Nurse Petrides' opinion, it was error to not consider it as relevant to show the severity of Plaintiff's impairment and the effect on Plaintiff's ability to work.

Plaintiff contends that the ALJ disregarded the reports of Plaintiff's daughter regarding Plaintiff's limitations. The ALJ must consider lay witness statements concerning a claimant's ability to do work. Stout v. Commissioner, 454 F.3d 1050, 1053 (9th Cir. 2006).  The ALJ must give specific, germane reasons for rejecting the opinion of the witness. Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993). In this case, the ALJ read the report of Plaintiff's

daughter but found that the objective evidence established that Plaintiff's impairments did not preclude basic work functions (Tr. 18). This finding was error in light of Plaintiff's medical records.

The Commissioner's ultimate decision to deny Plaintiff's claim for benefits is based on legal error and is not supported by substantial evidence.

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir. 2000). Remand for an award of benefits is appropriate when the ALJ has failed to provide legally sufficient reasons for rejecting evidence, no outstanding issue remains that must be resolved before a determination of disability can be made, and it is clear from the record that the ALJ would be required to find the claimant disabled were the rejected evidence credited as true. Varney v. Sec'y of HHS, 859 F.2d 1396, 1400 (9th Cir. 1988). The VE testified that assuming Plaintiff's testimony, Plaintiff would not be able to perform her past work or any work (Tr. 33). After applying the credit-as-true rule, no outstanding issue remains to be resolved before determining that Plaintiff is entitled to an award of benefits.

Accordingly,

**IT IS ORDERED** that the decision of the Commissioner denying Plaintiff's claim for benefits is reversed.

**IT IS FURTHER ORDERED** that this case is remanded for an award of benefits to Plaintiff.

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter Judgment accordingly.

DATED this 10th day of August, 2011.

_____
Earl H. Carroll
United States District Judge